ZIMMERS, Appellant, vs. CITY OF MILWAUKEE, Respondent.

*November 19, 1925—March 9, 1926.*

*Corporations: Dissension between stockholders: Sale of stock by one group to another: Aid of corporation to transaction: Ultra vires: Income taxes: Sale of stock or distribution of corporate assets?*

1. The findings of taxing officers on conflicting testimony as to whether a transaction between stockholders of a corporation and to which the corporation was a party constituted a sale by one stockholder to another group, to which the corporation lent its assistance, or a declaration of a dividend, will not be disturbed.   p. 275.

2. The assumption of a new obligation by the corporation and a pledge not only of its surplus but its entire property to meet such obligation, manifestly could not be considered as any part of a corporate dividend, as under sec. 182.19, Stats., a corporate dividend can be declared only out of net profits. p. 275.

3. The corporation properly could become a third party to an agreement between two groups of stockholders, whereby one group sold stock to the other, and where the agreement, if carried out, would settle internal dissensions of the corporation.   p. 275.

4. Such agreement could not be questioned by either group as being *ultra vires,* where the assistance lent by the corporation was toward the carrying out of a project which was plainly an actual benefit to the corporation in eliminating internal dissensions.   p. 276.

5. The transaction between the stockholders and to which the corporation had lent its assistance is *held* not to have been a declaration of a dividend, but an outright purchase and sale, on the profits of which the selling stockholder was liable for income tax.   p. 276.

APPEAL from a judgment of the circuit court for Milwaukee county: OTTO H. BREIDENBACH, Circuit Judge. *Affirmed.*

The plaintiff appellant was assessed and paid under protest an income tax for the year 1920 of $5,049.73, and brings this action to recover $4,876.51 thereof as an illegal excess.   This latter sum was based upon the determination

by the assessing officers that plaintiff had made a profit of $60,638.52 in the sale by him in October, 1920, of all his shares of the capital stock of the Kalt-Zimmers Manufacturing Company, viz. 869 22-27 shares, of the par value of $100 per share.

Prior to January 1, 1911, when the Income Tax Law became effective, he owned 671 shares; in October, 1911, he had issued to him 198 22-27 shares. Prior to January, 1911, four members of plaintiff's family held each one share, and after October, 1911, 1 8-27 shares. The combined holdings of plaintiff and his family were at all these times one half of the outstanding capital stock. The other one half was owned by Joseph L. Casper and members of the Kalt family, with one of whom Casper was related by marriage.

From 1911 until October, 1920, the plaintiff and his family controlled the affairs of the company by holding over as directors, and serious disputes were carried on between the interested parties.

In 1920 further litigation was begun with an avowed purpose of dissolving the corporation, made a party, which litigation, through the efforts of the respective attorneys, was deemed should be settled by one of the parties or factions buying out the other. The company was then and had been prosperous and had a considerable surplus. It was agreed that a buy-or-sell price per share should be fixed by the Casper party, to remain sealed and unknown to the Zimmers party until they had in writing declared their intention to either buy or sell, and that certain of the assets of the company should be used to meet the purchase price, and each party depositing the equivalent of $25,000 as security for performance.

Plaintiff elected to sell, and, at the price fixed as above stated, it required the payment of $189,000 for the stock

held by the Zimmers family. This payment to plaintiff was made up substantially as follows:

| | | |
|---|---:|---:|
| Note secured by mortgage on the company's property .......................... | $75,000 | 00 |
| Liberty bonds belonging to the company...... | 68,400 | 46 |
| War Savings stamps belonging to the company | 890 | 00 |
| Certificates of indebtedness (part of the $25,000 deposit) belonging to the company...... | 20,000 | 00 |
| | $164,290 | 46 |
| Also promissory note of Kalt and Casper.... | 24,667 | 54 |
| | $188,958 | 00 |

(Some minor adjustments as to accrued interest, etc., were made, not material here.) All the Zimmers stock was later assigned and turned over to the Kalt-Casper party.

In carrying out this transaction a stockholders' meeting was held on October 23, 1920, at which all stockholders were present or represented, and later on the same day the directors met.

The substance of the recitals in the minutes of the stockholders' meeting and the resolution there adopted, all of which was subsequently approved in the directors' meeting, is as follows:

That the meeting was called to consider a proposed settlement of the difficulties that for many years have involved the company, and the pending litigation aforesaid. It referred to the written proposal by the Kalts and Casper to the plaintiff and his family, with the option to buy or sell at the price fixed by the Kalt-Casper party as above recited, including the condition that the purchase price might be paid in part by a note and mortgage of the company, and the Liberty bonds, War Savings stamps, and certificates of indebtedness then owned by the company.

. The resolution, which was unanimously adopted, was as follows:

"Whereas, this company has been involved for many years in difficulties resulting from differences and disputes between two groups of stockholders, each holding a half of the capital stock of the company, which has been detrimental to its business and affairs, and has resulted in pending litigation directed toward the dissolution of the corporation; and

"Whereas, it is of the greatest importance to this company that such litigation be settled and that it be freed from such difficulties, and that the proposed settlement by the purchase of the stock of one of said groups by the other be accomplished under and pursuant to the proposal to be submitted by one of such groups of stockholders to the other, filed as a part of the minutes of this meeting; and

"Whereas, this company can assist in completing such settlement and can deliver such certificates of indebtedness, Liberty bonds and War Savings stamps and execute and deliver the note secured by mortgage upon its plant and real estate, as provided in such proposal, without impairing its capital stock or affecting the rights or interests of creditors:

"Therefore, be it resolved, that the proposed settlement is approved and that it will greatly promote the interests and welfare of and benefit the company to co-operate in carrying out such proposed settlement in the manner contemplated in such proposal; and that the proper officers of the company be and they are authorized and directed to make, execute, and deliver the note of $75,000 and the mortgage upon the plant and real estate of this company securing the payment of the same, and to deliver the certificates of indebtedness, Liberty bonds, and War Savings stamps in accordance with the requirements of such proposal, if accepted, and to do any other act or thing necessary to complete such settlement in accordance with the provisions of such proposal."

October 28, 1920, immediately after the closing of the transaction, the plaintiff signed a statement, in making an adjustment of accrued interest on the Liberty bonds, in which was recited the receipt by him of the Kalt and Casper

promissory note of $24,667.54 "as constituting the balance of the purchase price of 875 shares of stock of Kalt-Zimmers Manufacturing Company pursuant to agreement," etc., and that the accrued interest on the Liberty bonds constituting part of such purchase price was not deducted, etc.

The plaintiff in his income tax return for 1920 made no recital as to this transaction, relying, it appears, upon the advice of counsel as to the effect of the transaction, as will appear in the opinion as to the questions here involved.

In the return by the company for the income tax of 1920 it recited as having paid to plaintiff, in addition to his salary, as follows: "Dividends, premium on redemption of common stock, $101,500. Paid in part by Liberty bonds, mortgage, and notes."

Proceedings were had before the assessor of income tax upon the plaintiff's return, and the contentions there made are stated in the opinion.

The determination of the assessor of incomes as to the value to be placed upon the stock of the plaintiff on January 1, 1911, was changed by the board of review by increasing the valuation, and this ruling was approved on appeal to the state tax commission and confirmed by the circuit court. On the trial below findings were made and judgment entered dismissing the plaintiff's complaint, and plaintiff appeals.

*Norman L. Baker* of Milwaukee, for the appellant.

For the respondent there was a brief by *John M. Niven*, city attorney, and *Walter J. Mattison*, assistant city attorney, and oral argument by *Mr. Mattison*.

The following opinion was filed December 8, 1925:

ESCHWEILER, J. Plaintiff's main contention here, as in the proceedings before the taxing officers, is that the proceedings by the stockholders and directors of the Kalt-Zimmers Manufacturing Company in October, 1920, recited in the statement of facts, should be considered in legal

effect as being a distribution of the surplus and property of the corporation as though a dividend or distribution of surplus assets among its stockholders, and therefore, the company having in prior years accounted for and paid an income tax upon its receipts and revenue going to make up such surplus, that such being now paid as dividends would not be properly subjected to an income tax assessment against the plaintiff.

In support of this contention it is vigorously urged that it is proper to go behind the mere face of the proceedings, and that the court is required to look into and determine what was the real substance of the transaction rather than be confined to the mere form or language in which it was clothed. That there being no express statutory form and the authorities being uniform in holding that no precise formalities are required for such corporate action, the mere form in which this purported to be done is not controlling. However correct such contention may be, yet, giving the plaintiff the benefit of the most liberal construction possible to the contract between the parties and the proceedings of the corporation in October, 1920, we nevertheless are satisfied that the transaction falls far short of being that for which plaintiff contends, and for the following among other reasons:

The language used in the recitals of the minutes of the proceedings and of the resolution adopted by the stockholders and by the board of directors makes no statement to the effect that it was thereby and then intended to distribute, as a dividend, the corporate assets to the respective stockholders as such and in proportion to their holdings.

All the writings, including the declaration by plaintiff of October 28th in the adjustment of interest recited above, speak of the transaction as a purchase by the Kalt-Casper party of the shares of stock held by the Zimmers family and of the entire amount to be paid as the purchase price.

Zimmers v. Milwaukee, 189 Wis. 269.

There is no showing made of entries on the books of the corporation, at or after the time of the transaction, tending to indicate that, by appropriate entries, it was treated by the company at that time as a dividend as distinguished from an advance out of the property of the company for the furtherance of a purchase by one set of stockholders of the stock held by the other set in order that the internal dissensions that had so long troubled the company might be ended,—a consummation which the corporation might well and devoutly wish.

The oral testimony, if such could properly be considered in determining the real effect of the transaction, was on both sides of the question, the plaintiff testifying that it was the purpose at that time to distribute the surplus of the company as a dividend. Mr. Casper and his counsel, who took part in the transaction, testified to the contrary. On that feature of it, therefore, it presented a question of fact, and the findings of the taxing officers with reference to such manifestly could not be disturbed.

Further, it is hard to see how the assuming of an obligation of $75,000 to be secured by a mortgage on the property of the corporation and which was a part of the consideration paid for this stock should be considered as a distribution of assets or as part of a dividend. It was manifestly assuming a new obligation by the corporation, and pledging not only its surplus but its entire property for the meeting of such obligation. Manifestly, then, so much of the transaction as involved the assuming of an obligation for the further payment of the $75,000 could not be considered as any part of a corporate dividend, which can only be, under the statute, sec. 182.19, Stats., out of net profits, and must not in any way impair or diminish the capital.

Again, the recital in the minutes and resolution of the substantial interest the corporation itself had in having some agreement reached whereby its internal dissensions could be

settled, clearly indicates a proper interest that the corporation as such had in and to the buy-and-sell proposition that was then being considered. It could well become a third party to such agreement. Neither of the warring factions among the stockholders could very well thereafter question, on the ground of its being possibly an *ultra vires* act, the assistance lent by the corporation as such to this transaction, so plainly recited to be and which so plainly was an actual benefit to the corporation itself.

Stress is laid by plaintiff upon the recital in the findings by the trial court to the effect that, upon the acceptance of the proposal by the Zimmers party, the Liberty bonds, stamps, certificates of indebtedness, note, and mortgage were delivered by said corporation pursuant to said resolution, and the title to the same absolutely and irrevocably passed to and vested in the Zimmers faction, together with the promissory note of Kalt and Casper; arguing therefrom that it is in effect such a finding of fact as must lead to the legal and logical conclusion that the title to this property passed directly to the plaintiff from the corporation and never reached the person buying the Zimmers stock, and that this effect could only be reached by treating this as a dividend. We cannot, however, so construe this finding, nor could it control if treated as a conclusion of law, because if such it would be, as we have indicated above, incorrect.

We are therefore satisfied that no other reasonable construction can be given to the transaction between the interested parties in October, 1920, than that it was a purchase outright, at the designated price per share, of the entire holdings of the Zimmers family by the Kalt-Casper party, in which transaction the company on its own behalf and for its own interest assisted in advancing to the Casper-Kalt party, which happened to be the buyer under the option, thereafter exercised, some of its assets and pledged its credit.

Another question raised on this appeal is as to whether or not the proper findings were made as to the value of the stockholdings of *Mr. Zimmers* on January 1, 1911. The book value of the stock at the time showed a less amount than that determined to be the proper amount by the taxing officers. The plaintiff contends that it should be a much higher value by reason of assets not appearing on the books of the corporation. Testimony was given by him in this regard and testimony by other witnesses in opposition.

We deem it unnecessary to go into the details of this because it presented at most a question of fact for the taxing officers, and there is support in the record for the conclusion at which they arrived, and nothing would be gained by further discussion.

*By the Court.*—Judgment affirmed.

A motion for a rehearing was denied, with $25 costs, on March 9, 1926.